# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF OHIO
### WESTERN DIVISION

**MATTHEW JONES,**
      **Petitioner,**

    **v.**

**DAVE YOST, Ohio Attorney General,**
      **Respondent.**

**Case No. 3:22-cv-352**

**Newman, J.**

**Litkovitz, Chief M.J.**

## ORDER ON MOTION AND REPORT AND RECOMMENDATIONS

Petitioner, Matthew Jones, has pending before this Court a habeas corpus petition pursuant to 28 U.S.C. § 2254. This matter is before the Court on the Petition (Doc. 3), the state court record (Docs. 7 and 18), Respondent's Return of Writ (Doc. 8), and Petitioner's Reply (Doc. 12). Also before the Court is Petitioner's Protective Petition for Stay and Abeyance (Doc. 11). For the following reasons, the Undersigned **DENIES** the motion for stay and abeyance, and **RECOMMENDS** that Petitioner's claims be **DENIED**, and this action be **DISMISSED**.

## I. FACTUAL BACKGROUND

The factual and procedural history underlying the state court judgment against Petitioner were set forth by the Court of Appeals for the Second Appellate District as follows:

> {¶ 2} On October 18, 2017, the United States Attorney's Office filed a complaint against Jones in Case No. 3:18-cr-00002 before the United States District Court for the Southern District of Ohio. The charges set forth in the complaint included distribution, possession and production of child pornography.

> {¶ 3} On October 23, 2019, a Montgomery County grand jury indicted Jones in Montgomery C.P. No. 2018-CR-1627 on one count of rape of a person less than 10 years of age. Additionally, two counts of sexual battery, in violation of R.C. 2907.03(A)(3), and one count of gross sexual imposition, in violation of R.C. 2907.05(A)(5), were brought against Jones in a bill of information filed on December 11, 2019, which was later amended on January 22, 2020.

> {¶ 4} In the instant case, a Greene County grand jury issued an indictment

against Jones on November 27, 2019. The indictment set forth one charge of rape of a person less than 10 years of age.

{¶ 5} Jones entered into a plea agreement with the United States Attorney in Case No. 3:18-cr-00002, and on November 27, 2019, the federal district court imposed a sentence of 270 months in prison, to be served concurrently with whatever sentences were imposed in the Montgomery County and Greene County cases. On January 23, 2020, Jones pleaded guilty as charged in the Montgomery County case, and he was sentenced to a term of imprisonment of 20 years to life, to be served concurrently with the sentences imposed by the federal district court and the Greene County Court of Common Pleas.

{¶ 6} In the case at hand, Jones entered a plea agreement with the State on February 4, 2020, pursuant to which Jones agreed to plead guilty as charged, and the State agreed to recommend that Jones be sentenced to a term of 15 years to life in prison, with the term to be served concurrently with the sentences imposed in the federal case and the Montgomery County case. At Jones's sentencing on February 13, 2020, however, the trial court declined to accept the State's recommendation and sentenced Jones to a term of life without the possibility of parole. Jones timely filed a notice of appeal on February 20, 2020.

(Doc. 7, at PageID 300-01).

## II. PROCEDURAL HISTORY

### Greene County Trial Proceedings

Petitioner was indicted in the Greene County Court of Common Pleas on November 27, 2019, on one count of rape of a child less than ten years of age in violation of Ohio Rev. Code § 2907.02(A)(1)—a felony of the first degree, punishable by a minimum term of fifteen years in prison and a maximum term of life imprisonment. (Doc. 7, at PageID 238). On January 16, 2020, an order appointing John M. Leahy as counsel for Petitioner was entered. (*Id*., at PageID 348). At an arraignment held on January 17, 2020, during which Petitioner appeared by video due to his being in federal custody, Petitioner entered a plea of not guilty. (*Id*., at PageID 240).

On February 4, 2020, Petitioner appeared with counsel before Greene County Common Pleas Judge Michael A. Buckwalter and pleaded guilty to the charge as set forth in the

2

indictment.  (*Id*. at PageID 241-43).  The Rule 11 Notification and Waiver signed by both

Petitioner and his attorney, and filed on February 4, 2020, contained their acknowledgment that,

among other things, the maximum penalty was life imprisonment without parole.  (*Id*. at PageID

242).  Following a plea colloquy in open court (Doc. 18-1, at PageID 509-30), the trial judge

issued an entry finding that Petitioner was making his plea knowingly, intelligently, and

voluntarily, and accepting said plea.  (Doc. 7, at PageID 244).  A Plea Agreement Report signed

by Petitioner, his counsel, and the prosecuting attorney, and filed on February 4, 2020, stated:

> In consideration for Defendant's guilty plea as charged in the indictment, the
> State and Defendant agree to a prison term of 15 years to life, of which 15 years is
> mandatory.  The State and Defendant, with Court approval, agree this sentence is
> to run concurrently with Defendant's federal prison term from Case No.
> 3:18CR002 and to Defendant's prison term from Montgomery County Common
> Pleas Court Case No. 2018 CR 01627.  Defendant will be classified as an
> Aggravated Sexually Oriented Offender.  The State agrees not to bring additional
> charges as to conduct which occurred in Greene County, Ohio with respect to the
> minor child victim in this case, as part of this plea agreement.
>
> Defendant acknowledges that his attorney has explained, and that he
> understands, the Court is not bound by this agreement.

(Doc. 7, at PageID 245).

At the sentencing hearing one week later, on February 13, 2020 (Doc. 18-1, at PageID

531-48), the trial judge sentenced Petitioner to life imprisonment without the possibility of

parole.  (Doc. 7, at PageID 246-49).  In the judgment entry signed and filed the same day, the

trial judge noted his consideration of the factors set forth in Ohio Rev. Code § 2929.12,

characterized Petitioner's crime as "monstrous, so depraved, and so unspeakable," and concluded

"[a]fter an exhaustive examination of the presentence report, Defendant's history, and his

psychological examination, [] that Defendant is not capable of rehabilitation and would always

pose an imminent threat to the safety of young children."  (*Id*. at PageID 247).  Petitioner's

counsel filed a notice of appeal on February 20, 2020.  (*Id*. at PageID 254).

### Direct Appeal

Represented by new counsel, Petitioner filed an appellate brief in the Court of Appeals

for the Second Appellate District on June 4, 2020, raising the following assignments of error:

> Jones' First Assignment of Error:  Jones' plea was not voluntary, knowing nor intelligent.
>
> Jones' Second Assignment of Error:  The record does not support the trial court's excess [sic] sentence.

(Doc. 7, at PageID 263-81).  On October 2, 2020, the state appellate court issued an Opinion

overruling Petitioner's assignments of error and affirming the judgment against him.  (*Id*. at

PageID 299-310).

On October 19, 2021, Petitioner, proceeding *pro se*, filed an untimely notice of appeal in

the Supreme Court of Ohio, and a motion for leave to file a delayed appeal citing, among other

things, COVID-19 based restrictions.  (*Id*. at PageID 311, 314).  On November 3, 2021, the

Supreme Court of Ohio issued an Entry granting Petitioner's motion, and ordering him to file a

memorandum in support of jurisdiction within thirty days.  (*Id*. at PageID 344).  Because

Petitioner did not file that memorandum,[1] the Supreme Court of Ohio on December 7, 2021,

issued an Entry dismissing Petitioner's appeal.  (*Id*. at PageID 345).

### Federal Habeas Corpus

On December 13, 2022, Petitioner, proceeding *pro se*, filed the instant federal habeas

corpus petition in this Court.  (Doc. 3).  Petitioner raises the following grounds for relief:

---

[1]  Petitioner provides arguments and documentation that he did file his memorandum in support of jurisdiction, but that it did not arrive at the Ohio Supreme Court until December 10, 2021.  (Doc. 12, at PageID 408, 437, 444).

4

**Ground One:**  Plea was involuntary, in violation of the 5th, 6th, and 14th amendment[s].

(a)  Supporting facts:

1.)  A Global Federal Plea Agreement obligates Jones to plead guilty upon entering Greene County Court of Common Pleas.

2.)  The Global Federal Plea Agreement was unknown to the Greene County Court of Common Pleas, when Jones pleaded guilty.

3.)  Mr. Jones was unaware of the maximum penalty at the time of plea, to the Global Federal Plea Agreement.

**Ground Two:**  Greene County Court, relied on a unconstitutional condition upon sentencing Jones to LWOP.

(a)  Supporting facts:

Jones' First and Third Grounds, give rise to the Unconstitutional Conditions Doctrine, for which is connected to the 5th, 6th, 8th, and 14th Amendments.  Thereby, preserved through the other two Grounds.

**Ground Three:**  Jones' sentence violated the 8th Amendment prohibition against cruel and unusual punishment that is not supported by the record.

(a)  Supporting facts:

1.)  Jones' Criminal History
2.)  Jones' Psychological Evaluation
3.)  Jones was sentenced without a P.S.I.
4.)  The sentence imposed for the same conduct by Jones' other State and Federal cases, indeed imposed lesser sentences.

(Doc. 3, at PageID 35-40).

## III.  THE HABEAS PETITION SHOULD BE DENIED

In recognition of the equal obligation of the state courts to protect the constitutional rights of criminal defendants, and in order to prevent needless friction between the state and federal

courts, a state defendant with federal constitutional claims must fairly present those claims to the state courts for consideration before raising them in a federal habeas corpus action. *See* 28 U.S.C. § 2254(b)(1), (c); *see also Anderson v. Harless*, 459 U.S. 4, 6 (1982) (per curiam); *Picard v. Connor*, 404 U.S. 270, 275-76 (1971). In order to satisfy the fair presentment requirement, the claims asserted in the federal habeas petition must be based on the same facts and same legal theories that were presented to the state courts. *Carter v. Mitchell*, 693 F.3d 555, 568 (6th Cir. 2012) (citing *Williams v. Anderson*, 460 F.3d 789, 806 (6th Cir. 2006); *Wong v. Money*, 142 F.3d 313, 322 (6th Cir. 1998)). Moreover, a claim is deemed fairly presented only if the petitioner presented his constitutional claims for relief to the state's highest court for consideration. *See O'Sullivan v. Boerckel*, 526 U.S. 838, 845, 848 (1999); *Hafley v. Sowders*, 902 F.2d 480, 483 (6th Cir. 1990). If the petitioner fails to fairly present his constitutional claims through the requisite levels of state appellate review to the state's highest court, or violates some other procedural rule that prevents a merit-based review of the federal claims by the state's highest court, then the petitioner may have forfeited the ability to have those claims reviewed in federal habeas corpus. *See O'Sullivan*, 526 U.S. at 847-48; *Harris v. Reed*, 489 U.S. 255, 260-62 (1989); *McBee v. Grant*, 763 F.2d 811, 813 (6th Cir. 1985); *see also Weaver v. Foltz*, 888 F.2d 1097, 1099 (6th Cir. 1989).

It is well settled under the procedural default doctrine that a federal habeas court may be barred from considering a claimed federal constitutional error stemming from a state court judgment if the judgment rests on a state-law ground that is both "independent" of the merits of the federal claim and an "adequate" basis for the state court's decision. *See Harris*, 489 U.S. at 260-62. The Supreme Court has stated:

> In all cases in which a state prisoner has defaulted his federal claims in state court pursuant to an independent and adequate state procedural rule, federal habeas review of the claims is barred unless the prisoner can demonstrate cause for the default, and actual prejudice as a result of the alleged violation of federal law, or demonstrate that failure to consider the claims will result in a fundamental miscarriage of justice.

*Coleman v. Thompson*, 501 U.S. 722, 750 (1991).  Such a default may occur if the state prisoner files an untimely appeal, *id*. at 750, if he fails to present an issue to a state appellate court at his only opportunity to do so, *Rust v. Zent*, 17 F.3d 155, 160 (6th Cir. 1994), or if he fails to comply with a state procedural rule that required him to have done something to preserve the issue for appellate review.  *U.S. v. Frady*, 456 U.S. 152, 167-69 (1982); *Simpson v. Sparkman*, 94 F.3d 199, 202 (6th Cir. 1996).

The Sixth Circuit employs a three-prong test, which was initially established in *Maupin v. Smith*, 785 F.2d 135, 138 (6th Cir. 1986), to determine if a claim is subject to procedural default:

> First, the court must determine that there is state procedural rule that is applicable to the petitioner's claim and that the petitioner failed to comply with the rule. . . . Second, the court must decide whether the state courts actually enforced the state procedural sanction. . . . Third, the court must decide whether the state procedural forfeiture is an "adequate and independent" state ground on which the state can rely to foreclose review of a federal constitutional claim.

*Hoffner v. Bradshaw*, 622 F.3d 487, 495 (6th Cir. 2010) (quoting *Jacobs v. Mohr*, 265 F.3d 407, 417 (6th Cir. 2001) (in turn quoting *Maupin*)); *see also Johnson v. Bradshaw*, 493 F. App'x 666, 669 (6th Cir. 2012).  Under *Maupin* and as discussed above, if the three prerequisites are met for finding that a claim is subject to procedural default, federal habeas corpus review is precluded unless the petitioner can demonstrate either cause for and prejudice from the procedural default or that failure to consider the defaulted claim will result in a "fundamental miscarriage of justice."  *Hoffner*, 622 F.3d at 495 (citations omitted); *Johnson*, 493 F. App'x at 669.  *See also*

7

*Coleman*, 501 U.S. at 750; *Harris*, 489 U.S. at 262; *Murray v. Carrier*, 477 U.S. 478, 485 (1986); *Engle v. Isaac*, 456 U.S. 107, 129 (1982); *Wainwright v. Sykes*, 433 U.S. 72, 87 (1977).

The applicable standard of review governing the adjudication of constitutional issues raised by a petitioner is set forth in 28 U.S.C. § 2254(d). Under the that provision, a federal court shall not issue a writ of habeas corpus on a claim that the state courts adjudicated on the merits unless the state court adjudication "resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States," 28 U.S.C. § 2254(d)(1), or "was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding," 28 U.S.C. § 2254(d)(2). Section 2254(d)(1) circumscribes a federal court's review of claimed legal errors, while § 2254(d)(2) places restrictions on a federal court's review of claimed factual errors.

Under § 2254(d)(1), a state court decision is "contrary to" Supreme Court precedent "when the state court confronts facts that are materially indistinguishable from a decision of the Supreme Court and nevertheless arrives at a result different from its precedent" or "when the state court 'applies a rule that contradicts the governing law set forth in' Supreme Court cases." *Williams v. Coyle*, 260 F.3d 684, 699 (6th Cir. 2001) (quoting *Williams v. Taylor*, 529 U.S. 362, 406-07 (2000)). A state court decision involves an unreasonable application of Supreme Court precedent if the state court identifies the correct legal principle from the decisions of the Supreme Court but unreasonably applies that principle to the facts of the petitioner's case. *Williams v. Coyle*, 260 F.3d at 699. A federal habeas court may not find a state adjudication to be "unreasonable" simply because the court concludes in its independent judgment that the

8

relevant state court decision applied clearly established federal law erroneously or incorrectly. *England v. Hart*, 970 F.3d 698, 710 (6th Cir. 2020). Rather, to be deemed unreasonable, "'the state court's ruling … [must be] so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement.'" *Id*. (quoting *Harrington v. Richter*, 562 U.S. 86, 103 (2011)).

The Supreme Court has made clear that in assessing the merits of a constitutional claim under § 2254(d)(1), the federal habeas court must apply the Supreme Court precedents that controlled at the time of the last state court adjudication on the merits, as opposed to when the conviction became "final." *Greene v. Fisher*, 565 U.S. 34, 38 (2011); *cf. Otte v. Houk*, 654 F.3d 594, 600 (6th Cir. 2011) (citing *Lockyer v. Andrade*, 538 U.S. 63, 71-72 (2003)) (in evaluating the merits of a claim addressed by the state court, the federal habeas court must "look to Supreme Court cases already decided at the time the state court made its decision"). Decisions by lower courts are relevant "to the extent [they] already reviewed and interpreted the relevant Supreme Court case law to determine whether a legal principle or right had been clearly established by the Supreme Court." *Otte*, 654 F.3d at 600 (quoting *Landrum v. Mitchell*, 625 F.3d 905, 914 (6th Cir. 2010)). The writ may issue only if the application of clearly established federal law is objectively unreasonable "in light of the holdings, as opposed to the dicta, of the Supreme Court's decisions as of the time of the relevant state court decision." *McGhee v. Yukins*, 229 F.3d 506, 510 (6th Cir. 2000) (citing *Williams*, 529 U.S. at 412).

Further, § 2254(d)(2) prohibits a federal court from granting an application for habeas relief on a claim that the state courts adjudicated on the merits unless the state court adjudication of the claim "resulted in a decision that was based on an unreasonable determination of the facts

9

in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d)(2).  In this regard, § 2254(e)(1) provides that the findings of fact of a state court are presumed to be correct and that a petitioner bears the burden of rebutting the presumption of correctness by clear and convincing evidence.

Finally, the Supreme Court has clarified that in making the § 2254(d) "reasonableness" determination, a federal court in habeas corpus must confine its review to the record that was before the state court that adjudicated the claim on the merits.  *Cullen v. Pinholster*, 563 U.S. 170, 181 (2011).

### A. Ground One

### 1. Procedural Default

Petitioner argues in his first ground for relief that his guilty plea was involuntary, in violation of his rights under the Fifth, Sixth, and Fourteenth Amendments.  (Petition, Doc. 3, at PageID 35-36; Reply, Doc. 12, at PageID 421-29).  Respondent asserts that this claim is barred by procedural default, due to Petitioner's failure to present the claim to the Supreme Court of Ohio when Petitioner failed to file his memorandum in support of jurisdiction after being granted the right to pursue a delayed direct appeal.  (Return of Writ, Doc. 8, at PageID 368-71).  The Court disagrees because, although Petitioner committed procedural default, it appears that he has satisfied the cause-and-prejudice test for excusing that default.

Petitioner first committed procedural default when he failed to file an appeal to the Supreme Court of Ohio from the state appellate court's October 2, 2020, decision affirming the trial court's judgment against Petitioner.  That default was essentially forgiven when Petitioner sought and obtained permission from the Ohio Supreme Court to file a delayed direct appeal.

10

But Petitioner committed another procedural default when he failed to file a timely memorandum in support of jurisdiction.  The Ohio Supreme Court enforced that procedural default when it dismissed his delayed appeal for the failure to prosecute, and the rule at issue—imposing a thirty-day deadline for filing a memorandum in support of jurisdiction—is an adequate and independent state ground upon which to deny relief.  *Sohrabi v. Richland Corr. Inst. Warden*, Case No. 12-cv-007, 2013 WL 3209533, at *9 (N.D. Ohio Jun. 18, 2013) (and cases cited therein); *Jones v. Warden, Lebanon Corr. Inst.*, Case No. 1:06-cv-212, 2007 WL 2326867, at *4 (S.D. Ohio Aug. 10, 2007).  The foregoing satisfies the *Maupin* test for establishing procedural default in the Sixth Circuit.

As cause to excuse this default,[2] Petitioner argues that he *did* file a memorandum in support of jurisdiction, but that his memorandum arrived seven days late due to COVID-19-based restrictions on his access to legal resources, COVID-19-related delays in United States mail delivery, and interference by prison officials in failing to timely mailing Petitioner's pleading.  (Reply, Doc. 12, at PageID 397, 398-400, 407-408).  Petitioner's last argument is well-taken.

Petitioner is correct that, in the Sixth Circuit, "government inaction such as delay in mailing a prisoner's court filing is one objective factor that may constitute cause for a prisoner's failure to comply with a state's procedural rule."  *Foster v. Warden, Chillicothe Correctional Inst.*, 575 F. App'x 650, 654 (6th Cir. 2014) (citations omitted).  *See also Maples v. Stegall*, 340 F.3d 433, 439 (6th Cir. 2003) ("Where a pro se prisoner attempts to deliver his petition for mailing in sufficient time for it to arrive timely in the normal course of events, however, the

---

[2]  Petitioner also offers these arguments in support of his motion for stay-and-abeyance, (Docs. 11 and Doc. 12), which the Court addresses later below.

[mailbox] rule is sufficient to excuse a procedural default based upon a late filing. If the prison had accepted and mailed Maples's petition when he first attempted to deliver it-five days before the state's deadline-we have no doubt that it would have been timely delivered in the normal course of events."); *Henderson v. Palmer*, 730 F.3d 554, 560 (6th Cir. 2013) ("when a prisoner submits a [state pleading] to the prison mailroom five days prior to a filing deadline and it is not delivered there is 'cause to excuse [the] procedural default.'") (quoting *Maples*, 340 F.3d at 439)).

Petitioner additionally suggests that COVID-related mail delays and restrictions on access to legal resources also contributed to his failure to timely file his memorandum in support of jurisdiction in the Supreme Court of Ohio. (Reply, Doc. 12, at PageID 397, 398-400). Petitioner is correct that COVID-related delays in the United States mail delivery, and impediments to access to law libraries and other resources and materials, prompted courts to consider such arguments as cause to excuse the failure to comply with a state procedural rule or as a basis for equitable tolling to excuse the untimely filing of a habeas petition. *Gilmore v. Warden, London Corr. Inst.*, Case No. 1:22-cv-417, 2023 WL 5048081, at *6 (S.D. Ohio Aug. 8, 2023) ("In recent years, courts have [] considered how issues related to the COVID-19 pandemic fit within the equitable tolling analysis."); *Little v. Sheldon*, Case No. 3:20-cv-02527-BYP, 2023 WL 2666116, at *6-7 (N.D. Ohio Mar. 6, 2023) (same). Case law seems to require a petitioner offering COVID-based arguments to excuse a procedural default or an untimely filing to demonstrate with specificity how COVID-based restrictions or delays caused his failure to comply with a state procedural rule or timely file a petition, *Gilmore*, 2023 WL 5048081, at *6 ("'The bottom line is that the COVID-19 pandemic does not automatically warrant equitable

12

tolling for a petitioner who seeks it on that basis. The petitioner must establish that he was pursuing his rights diligently *and* that the COVID-19 pandemic specifically prevented him from filing his motion.'" (citation omitted and cleaned up); *Little*, 2023 WL 2666116, at *7 (rejecting "bare-bones argument" courts have rejected because it failed to show that the pandemic specifically prevented the petitioner from filing his petition); *Redden v. Black*, Case No. 1:22-cv-00694-BMB, 2023 WL 2482919, at *13 (N.D. Ohio Jan. 6, 2023) (rejecting argument because pandemic did not prevent other timely filings and because there was no obvious nexus between the pandemic and the petitioner's failure to pay the filing fee or file an application for indigency); *Dawson-Durgan v. Shoop*, Case No. 1:19-cv-382, 2022 WL 528271, at *16 (S.D. Ohio Feb. 22, 2022) (rejecting pandemic argument as cause for the failure to file a notice of appeal because that is a fairly simple filing and requires no legal research). It is not necessary here to determine whether Petitioner has demonstrated specifically how COVID-related delays and restrictions played a role in his inability to file his memorandum in the Supreme Court of Ohio by the December 3, 2021, deadline. The Court finds persuasive Petitioner's argument that his default should be excused by the failure of prison authorities to file his memorandum by the Ohio Supreme Court's thirty-day deadline.

As noted above, Petitioner asserts, *and* provides documentation in support, that he delivered his memorandum in support of jurisdiction to prison authorities for mailing on November 28, 2021—*six days* before the December 3, 2021, deadline. (Reply, Doc. 12, at PageID 407; Affidavit, Doc. 12-1, at PageID 437). The six-day timeframe in which Petitioner delivered his memorandum in support of jurisdiction to prison officials for mailing is in keeping with cases that have found cause from prison officials' failure to effectuate the timely filing of a

13

pleading delivered to them in time to comply with the pleading's deadline. *Henderson*, 730 F.3d at 560 (five days); *Maples*, 340 F.3d at 439 (five days); *Foster*, 575 F. App'x at 653-54 (six days); *Mohn v. Bock*, 208 F. Supp. 2d 796, 801-02 (E.D. Mich. 2002) (five days); *Hearn v. Warden, Belmont Corr. Inst.*, Case No. 2:22-cv-2916, 2023 WL 5979208, at *9-10 (S.D. Ohio Sep. 14, 2023) (seven days); *Taylor v. Sheldon*, Case No. 1:18-cv-231, 2019 WL 8509655, at *9 (N.D. Ohio Jan. 3, 2019 (eight days). *Cf. Love v. Warden, Ross Corr. Inst.*, Case No. 2:16-cv-19, 2017 WL 2728597, at *3 (S.D. Ohio June 26, 2017) (and cases cited therein) (finding that two to three days was an insufficient amount of time to establish cause). The Court is satisfied that Petitioner has demonstrated cause to excuse the default of his first ground for relief.

When a petitioner has demonstrated interference or inaction on the part of prison officials in failing to timely mail a state pleading as "cause," there exists conflicting views as to what constitutes "prejudice." Although some courts have linked a showing of prejudice with the merit of the underlying claim,[3] prevailing case law holds that prejudice ensues from the state courts' refusal to consider the petitioner's claims. *Foster*, 575 F. App'x at 655 (and cases cited therein); *Maples*, 340 F.3d at 439; *Henderson*, 730 F.3d at 560; *Brown v. Warden, Lebanon Corr. Inst.*, Case No. 3:08-cv-477, 2011 WL 5357831, at *7 (S.D. Ohio Aug. 30, 2011). Here, it is undisputed that the Supreme Court of Ohio dismissed Petitioner's delayed appeal, and refused to consider his claims, when his memorandum in support of jurisdiction did not arrive by the December 3, 2021, deadline. (Doc. 7, at PageID 345). Petitioner having demonstrated cause and prejudice sufficient to excuse the procedural default of his first ground for relief, the Court turns to the merits of that claim.

---

[3] *See Mohn*, 208 F. Supp. 2d at 802-03 (finding no prejudice because underlying claim was without merit); *Hearn v. Warden, Belmont Corr. Inst.*, 2023 WL 5979208, at *11-14 (same); *Taylor*, 2019 WL 8509655, at

14

### 2. Merits

Petitioner offers three reasons why his guilty plea was involuntary, in violation of his rights under the Fifth, Sixth, and Fourteenth Amendments.  (Reply, Doc. 12, at PageID 421-29). First, according to Petitioner, "during the plea negotiations with Greene County Prosecutors amid the creation of the Global Federal Plea Agreement (GFPA) also known as Jones' Federal Plea Agreement which included the Greene County Prosecutors[,]" Petitioner was not represented by *state* defense counsel—only *federal* defense counsel.  (*Id*. at PageID 421). "Second," Petitioner continues, "when Jones signed the GFPA, Jones was unaware of the direct consequences of a violation of O.R.C. § 2907.02(A)(1)(b), namely, its maximum penalty of Life Without the Possibility of Parole (LWOP)."  (*Id*.).  "Lastly," Petitioner concludes, "the government, represented by the Greene County Prosecutor's office, failed to disclose to the GCCCP, that Jones was already obligated by the GFPA to plead guilty, and could not choose to go to trial upon entering his plea, precluding the GCCCP from adhering to rule 11, knowingly." (*Id*.).  Petitioner's arguments are insufficient to establish that his guilty plea was not knowing, intelligent, and voluntary.

Because a criminal defendant waives numerous constitutional rights when he enters a guilty plea, any plea must be entered into knowingly, intelligently, and voluntarily with sufficient awareness of the relevant circumstances and likely consequences.  *Boykin v. Alabama*, 395 U.S. 238, 242 (1969); *see also Brady v. U.S.*, 397 U.S. 742, 748 (1970); *King v. Dutton*, 17 F.3d 151, 153 (6th Cir. 1994).  Under both the Constitution and the rules of criminal procedure, a plea is considered knowing when the "defendant understands his or her applicable constitutional rights, the nature of the crime charged, the consequences of the guilty plea, and the factual basis for

---

\*10 (same).                             15

concluding that the defendant committed the crime charged." *U.S. v. Webb*, 403 F.3d 373, 378-79 (6th Cir. 2005) (citing *U.S. v. Goldberg*, 862 F.2d 101, 106 (6th Cir. 1988)).

"[A] plea does not qualify as intelligent unless a criminal defendant first receives 'real notice of the true nature of the charge against him, the first and most universally recognized requirement of due process.'" *Bousley v. U.S.*, 523 U.S. 614, 618 (1998) (quoting *Smith v. O'Grady*, 312 U.S. 329, 334 (1941)).  In *Brady*, the Supreme Court adopted the following standard for determining the voluntariness of a guilty plea:

> [A] plea of guilty entered by one fully aware of the direct consequences, including the actual value of any commitments made to him by the court, prosecutor, or his own counsel, must stand unless induced by threats (or promises to discontinue improper harassment), misrepresentation (including unfulfilled or unfulfillable promises), or perhaps by promises that are by their nature improper as having no proper relationship to the prosecutor's business (e.g. bribes).

*Brady*, 397 U.S. at 755 (quoting *Shelton v. U.S.*, 246 F.2d 571, 572 n.2 (5th Cir. 1957) (en banc), *rev'd on other grounds*, 356 U.S. 26 (1958)).  The constitutional validity of a guilty plea must be assessed in light of all the relevant circumstances surrounding the plea.  *Brady*, 397 U.S. at 749 (and cases cited therein); *King*, 17 F.3d at 153 (citations omitted).

For a guilty plea to be deemed voluntarily entered with a sufficient awareness of the relevant circumstances and likely consequences, the defendant must be correctly informed of the maximum sentence that could be imposed.  *King*, 17 F.3d at 154; *Hart v. Marion Corr. Inst.*, 927 F.2d 256, 259 (6th Cir. 1991).  Although the defendant must be apprised of such "direct consequences" of the plea, the court is under no constitutional obligation to inform the defendant of all the possible "collateral consequences" of the plea.  *King*, 17 F.3d at 153; *see also El-Nobani v. U.S.*, 287 F.3d 417, 421 (6th Cir. 2002).  "When a defendant subsequently brings a federal habeas petition challenging his plea, the state generally satisfies its burden by producing

16

a transcript of the state court proceeding." *Garcia v. Johnson*, 991 F.2d 324, 326 (6th Cir. 1993).

As the Supreme Court noted in *Blackledge v. Allison*, 431 U.S. 63 (1977):

> [T]he representations of the defendant, his lawyer, and the prosecutor at [the guilty plea hearing], as well as any findings made by the judge accepting the plea, constitute a formidable barrier in any subsequent collateral proceedings. Solemn declarations in open court carry a strong presumption of verity. The subsequent presentation of conclusory allegations unsupported by specifics is subject to summary dismissal, as are contentions that in the face of the record are wholly incredible.

*Id*. at 73-74 (internal citations omitted).

As a preliminary matter, the Court must determine whether to review Petitioner's claim *de novo* or through the AEDPA prism of deference. Because the state courts *ultimately* rejected Petitioner's voluntariness challenge not on the merits, but on the basis of a procedural default, *and* Petitioner was able to overcome that default with a showing of cause and prejudice, the Court finds that Petitioner's claim is entitled to *de novo* review as explained below.

Petitioner challenged the constitutional validity of his guilty plea on direct appeal to the Court of Appeals for the Second Appellate District, and the appellate court rejected his claim on the merits. (Doc. 7, at PageID 301-05). Ordinarily, that decision would be the starting point of this Court's analysis, in view of the deference that state-court merits adjudications enjoy under the AEDPA. But, as noted earlier, after the state appellate court issued its decision, Petitioner later failed to perfect an appeal to the Supreme Court of Ohio. That means that the state courts rejected Petitioner's claim not on the merits, but on the basis of procedural default, ostensibly relieving this Court of any obligation to defer to the state appellate court's merits decision. *See, e.g., Barton v. Warden, Southern Ohio Corr. Fac.*, 786 F.3d 450, 460-61 (6th Cir. 2015) (federal habeas court owes no deference where one state court addresses merits of claim and higher state

court later denies claim on procedural basis); *see also Hill v. Mitchell*, 842 F.3d 910, 9 n.14 (6th Cir. 2016) ("In *Barton*, we explained that, even if a trial court decides a claim on the merits, that decision is 'stripped of any preclusive effect under the last-reasoned decision rule' when the state appellate court affirms the trial court's decision 'entirely based on a procedural bar.'" (quoting *Barton*, 786 F.3d at 463).[4]  Also militating in favor of *de novo* review is the fact that Petitioner was able to overcome that default with a showing of cause and prejudice.  When that is the case, federal habeas courts conduct *de novo* review.  *See Hand v. Houk*, 871 F.3d 390, 408 (6th Cir. 2017) (federal habeas court conducts *de novo* review where cause and prejudice is found to excuse procedural default).  But even under the more lenient *de novo* review standard, the Court finds Petitioner's claim to be meritless.

Petitioner's first argument against the validity of his guilty plea is that he had no state defense counsel present during plea negotiations with the Greene County Prosecutors concerning the Global Federal Plea Agreement ("GFPA").  (Reply, Doc. 12, at PageID 421-25.)  He reasons that, under the principle of dual sovereignty, he was entitled to separate state and federal counsel since state and federal crimes are necessarily separate, and the right to counsel is offense-specific.  (*Id.* at PageID 423-24).  Petitioner states that he was not appointed counsel for his Greene County case until January 16, 2020, and that the GFPA pursuant to which he ultimately pleaded guilty to the Greene County indictment was negotiated earlier, meaning that Petitioner essentially pleaded guilty to a state charge in accordance with a federal plea agreement that was negotiated without his being represented by state defense counsel.  (*Id.*).  He asserts that "there is a reasonable probability that had [he] been appointed state Counsel, that he would not have

---

    [4]  *But see Brooks v. Bagley*, 513 F.3d 618, 624-25 (6th Cir. 2008) (when a state court issues a procedural ruling and a detailed merits ruling, federal courts owe deference to the merits ruling).

pleaded guilty in the GCCCP, and instead would have insisted on going to trial." (*Id*. at PageID 423). Petitioner's argument is factually and legally flawed.

As a preliminary matter, Petitioner did not raise this dual sovereignty/Sixth Amendment right to offense-specific counsel in the state courts when he challenged the voluntariness of his guilty plea on direct appeal. That should result in his waiver of the right to raise that argument here. In any event, Petitioner's argument is without merit. Petitioner's Sixth Amendment right to counsel with respect to the Greene County case had not attached at the time of the federal plea negotiations. Moreover, any theoretical effect the GFPA *might* have had on the voluntariness of Petitioner's plea to the Greene County charges was nullified by the Greene County plea colloquy. That colloquy, during which Petitioner *never* mentioned the GFPA, fully satisfied the constitutional requirements for a voluntary guilty plea.

Petitioner stresses that the right to counsel is offense-specific. While that is true, *see, e.g., McNeil v. Wisconsin*, 501 U.S. 171, 175 (1991), that fact does not support his argument that he was deprived of his right to counsel vis-à-vis his plea to the Greene County charges. For those charges had yet to be commenced at the time the federal plea negotiations were taking place. And the offense-specific Sixth Amendment right to counsel does not attach until the formal commencement of criminal proceedings.

"The Sixth Amendment guarantees a right to counsel at critical stages of a criminal proceeding." *Kennedy v. U.S.*, 756 F.3d 492, 493 (6th Cir. 2014) (citing *Montejo v. Louisiana*, 556 U.S. 778, 786 (2009)). The Sixth Circuit has held that, "[o]ur rule—copied word for word from the Supreme Court's rule—is that the Sixth Amendment right to counsel attaches only 'at or after the initiation of judicial criminal proceedings—whether by way of formal charge,

19

preliminary hearing, indictment, information, or arraignment.'" *Turner v. United States*, 885

F.3d 949, 951 (6th Cir. 2018) (quoting *Kirby v. Illinois*, 406 U.S. 682, 689 (1972) (plurality

opinion)).  Thus, "the Sixth Amendment right to counsel does not extend to preindictment plea

negotiations." *Turner*, 885 F.3d at 951 (citing *United States v. Moody*, 206 F.3d 609, 614-15

(6th Cir. 2000)); *Kennedy*, 756 F.3d at 493-94 (and cases cited therein).  The cases cited by

Petitioner do not hold otherwise.

In *Pough v. U.S.*, 442 F.3d 959 (6th Cir. 2006), the petitioner pleaded guilty first to

federal drug charges, and then to state murder charges, and subsequently sought to vacate his

federal sentence on the basis of ineffective assistance of his federal trial and appellate counsel.

*Id*. at 962-63.  During the plea negotiations, the petitioner was represented by separate counsel

for the federal and state charges, who appear to have worked together to negotiate a global

federal plea agreement.  *Id*. at 968.  But that case does not support Petitioner's position that he

had a right to state-appointed counsel for state charges that had yet to be brought.

The other case cited by Petitioner, *U.S. v. Alvarado*, 440 F.3d 191 (4th Cir. 2006),

actually undermines Petitioner's position.  There, the petitioner argued that the state charges he

faced caused a Sixth Amendment right to counsel to attach for later-charged federal crimes,

stemming from a joint state-and-federal investigation, *id*. at 195-96.  The Fourth Circuit

expressly held that, "[e]ven though an accused has a Sixth Amendment right to counsel for one

offense—because formal charges have been brought—the right does not automatically attach to

other offenses for which he has not been charged." *Id*. at 196 (citing *Texas v. Cobb*, 532 U.S.

162, 168 (2001)).  "Instead," the court continued, "the right only includes uncharged offenses

that constitute the 'same offense' as one an accused has been formally charged with

20

committing." *Id.* (citing *Cobb*, 532 U.S. at 172-73).

The GFPA pursuant to which Petitioner pleaded guilty to federal charges was executed and filed in federal court (Case No. 3:18-cv-002) in December 2018. (Doc. 12-9, at PageID 483-90). The GFPA did mention the Montgomery and Greene County cases:

7.  **Additional Obligations of the Defendant:**

   (a) <u>State Charges</u>

Defendant agrees and acknowledges that the resolution of federal charges in this case is part of a global resolution that also involves state charges arising out of the Greene County Court of Common Pleas (the "Greene County case") and state charges arising out of the Montgomery County Court of Common Pleas (the "Montgomery County case"). As part of the global resolution, Defendant agrees to the following:

   (i) to plead guilty in the Greene County Court of Common Pleas to one (1) count of Rape of a Person under 13 Years of Age (to wit: a person under 10 years of age), in violation of O.R.C. § 2907.02(a)(1)(b), and to fully comply with all of his obligations contained in a separate plea agreement that he has or is about to enter into with the Green County Prosecuting Attorney; and

   (ii) to plead guilty in the Montgomery County Court of Common Pleas to one (1) count of Rape of a Person under 13 Years of Age (to wit: a person under 10 years of age), in violation of O.R.C. § 2907.02(a)(1)(b); two (2) counts of Sexual Battery, in violation of O.R.C. § 2907.03(A)(3); and one (1) count of Gross Sexual Imposition, in violation of O.R.C. § 2907.05(A)(5), and to fully comply with all of his obligations contained in a separate plea agreement that he has or is about to enter into with the Montgomery County Prosecuting Attorney.

Defendant's failure to comply with these obligations shall constitute a violation of this plea agreement as described below in Paragraph 11.

(Doc. 12-9, at PageID 485-86). The GFPA was signed by the Assistant United States Attorney, a Greene County assistant prosecutor, a Montgomery County assistant prosecutor, Petitioner's federally appointed counsel, and Petitioner himself. (*Id.*, at PageID 489-90).

It bears noting that, although the GFPA mentioned the Greene and Montgomery County

21

cases, neither of those cases had been commenced at the time the GFPA was executed. Petitioner's federal sentencing took place on November 27, 2019.  (Doc. 7, at PageID 300-01). The Greene County indictment was returned that same day.  (*Id*., at PageID 238).  Defense counsel was appointed in the Greene County counsel case on January 16, 2020, in advance of the arraignment, which took place on January 17, 2020.  (*Id*., at PageID 348).   Petitioner entered his guilty plea in Greene County on February 4, 2020.  (*Id*., at PageID 301).  Petitioner was sentenced one week later, on February 13, 2020.  (*Id*.)

The cases discussed above establish that Petitioner's Sixth Amendment right to counsel did not attach in the Greene County case until the formal commencement of criminal charges against him by Greene County.  Whether that is defined as when he was indicted, which was on November 27, 2019, or when he was arraigned, which was on January 17, 2020, it certainly was not in December 2018, when the global federal plea agreement was signed and filed.

Petitioner's guilty plea to the eventual Greene County charges may have been contemplated at the time of the earlier plea negotiation process that stemmed from the federal charges.  But his guilty plea to the Greene County charges was entered separately, independently, and with the assistance of state-appointed counsel.  Petitioner pleaded guilty to the Greene County charges pursuant *not* to the federal global plea agreement, *but* to a separate Greene County plea agreement, negotiated and signed by Petitioner and his state-appointed defense counsel.  (Doc. 7, at PageID 242-45).  Petitioner's change-of-plea colloquy took place in the Greene County Court of Common Pleas, with the presence of his state-appointed defense counsel.  (Doc. 7, at PageID 304).  Petitioner affirmed under oath that his state-appointed counsel fully explained the nature of the charges, his possible defenses, the maximum penalties,

and the rights he was waiving. (Doc. 18-1, at PageID 516-17). At no point during that colloquy, despite the trial court referencing Petitioner's having been sentenced on the federal and Montgomery County charges (Doc. 18-1, at PageID 516), did Petitioner mention the GFPA. Because Petitioner does not challenge the trial court's compliance with Ohio Crim. R. 11, Petitioner cannot logically challenge the trial court's finding that Petitioner's plea was entered knowingly, intelligently, and voluntarily pursuant to the agreement that Petitioner signed and to Petitioner's sworn declarations in open court. (Doc. 7, at PageID 244 ("The Court further finds that the Defendant is making this plea knowingly, intelligently, and voluntarily.")). In fact, Petitioner confirmed during the plea colloquy that he was entering his plea of his own free will, knowingly, intelligently, and voluntarily. (Doc. 18-1, at PageID 528). The foregoing defeats Petitioner's argument that his lack of state-appointed counsel at the time the GFPA was signed in December 2018 undermines the constitutional validity of the guilty plea he entered in Greene County on February 4, 2020.

Petitioner attempts to sidestep this reality by arguing that the adequacy of the trial court's Rule 11 colloquy, and ultimately the voluntariness of Petitioner's plea, were undermined by the fact that the trial court was unaware, due to a failure to disclose on the part of the prosecutor and defense counsel, that Petitioner was already obligated by the GFPA to plead guilty to the Greene County charges. (Reply, Doc. 12, at PageID 421, 427-30). Whether or to what extent Petitioner was, or perceived himself to be, bound by the GFPA to plead guilty to the Greene County charges, that is not what he said at any time during the Greene County proceedings. As Petitioner's appellate counsel conceded (Reply Brief, Doc. 7, at PageID 295), and the state appellate court observed (Appellate Opinion, Doc. 7, at PageID 305, n.1), the GFPA was never

23

made a part of the record in Petitioner's Greene County proceedings.  And while appellate counsel suggested that Petitioner's state trial counsel was partially to blame for that omission, state appellate counsel did not raise a claim of ineffective assistance of trial counsel for that omission.[5]

The plea Entry and Order that _was_ a part of the record expressly stated:  "The Court finds that the Defendant understood any plea negotiations concluded between Defendant's attorney and the Assistant Prosecuting Attorney *and that the underlying agreement upon which the plea(s) is/are based, was stated on the record in open Court.*  The Defendant then entered his/her plea of **GUILTY**, both orally and in writing in open Court, to the offense(s) and specification(s) set forth in the written plea(s)."  (Doc. 7, at PageID 244 (italicized emphasis added)).  During the plea colloquy, Petitioner acknowledged, among other things, that his counsel had explained to him that he did not have to plead guilty and could choose to fight the charges, (Doc. 18-1, at PageID 516-17), and that the plea agreement that was read into the record was the entire underlying agreement to which he was pleading (*id*. at PageID 523-24).

---

[5]  To the extent that Petitioner is asking this Court to take the GFPA into consideration now, the Court questions whether 28 U.S.C. § 2254(e)(2) precludes consideration of that document.  That section provides:

(2) If the applicant has failed to develop the factual basis of a claim in State court proceedings, the court shall not hold an evidentiary hearing on the claim unless the applicant shows that—

(A) the claim relies on—

(i) a new rule of constitutional law, made retroactive to cases on collateral review by the Supreme Court, that was previously unavailable; or

(ii) a factual predicate that could not have been previously discovered through the exercise of due diligence; and

(B) the facts underlying the claim would be sufficient to establish by clear and convincing evidence that but for constitutional error, no reasonable factfinder would have found the applicant guilty of the underlying offense.

24

Thus, Petitioner's "already obligated" argument is belied by his written agreement *and* sworn declarations in open court.  A criminal defendant's solemn declaration of guilt carry a presumption of truthfulness.  *Blackledge v. Allison*, 431 U.S. 63, 74 (1977).  As another court within this district recently observed, "In view of how fundamental the plea process is to the functioning of the criminal justice system, *id*. at 71 ("Whatever might be the situation in an ideal world, the fact is that the guilty plea and the often concomitant plea bargain are important components of this country's criminal justice system."), statements made in open court and under oath are binding absent an extraordinary showing because they have to be."  *Dunlap v. Warden*, Case No. 2:21-cv-5849, 2022 WL 16950956, at *7 (S.D. Ohio Nov. 15, 2022). Petitioner has not overcome the presumption of truthfulness that attached to his sworn admissions and declarations in open court.

The truth of the matter, as told by the record, is that when Petitioner walked into that Greene County Court of Common Pleas to plead guilty, he did so of his own free will.  He pleaded guilty *not* because he felt obligated by the GFPA, but because he hoped and expected to receive a 15-year sentence to run concurrently with his other two sentences.  But when asked whether he understood that the maximum penalty was life imprisonment without the possibility of parole ("LWOP"), *and* that the trial court was not bound by the plea agreement, *and* that the Greene County Plea and Entry Order was the sole agreement pursuant to which he was pleading- -he answered in writing and in open court that he did.  (Doc. 18-1, at PageID 520, 521-22, 523-24).  When asked whether he was pleading guilty of his own free will, he answered that he was. (*Id*. at PageID 515, 528).  And when asked whether he was pleading knowingly, intelligently, and voluntarily, he answered each time that he was.  (*Id*. at 528).  Petitioner cannot now be heard

to argue that his guilty plea was involuntary.

Nor will he be heard to assert that he was unaware that LWOP was possible. (Reply, Doc. 12, at PageID 421, 425-27). That assertion is belied by the record of Petitioner's sworn declarations in open court and written plea agreement and entry. (Waivers and Plea, Doc. 7, at PageID 242; Entry and Order, Doc. 7, at PageID 244; Plea Colloquy, Doc. 18-1, at PageID 521-22). It is also contradicted by state appellate counsel's admission in the direct appeal brief that "Jones *was aware* that the maximum sentence for his offense in this case would be either 15 years to life *or life without the possibility of parole*…." (Doc. 7, at PageID 270 (emphasis added)).

In sum, Petitioner argues that he never would have pleaded guilty if he thought he would be sentenced to LWOP. (Reply, Doc. 12, at PageID 424 ("Who would intelligently, knowingly, or voluntarily plead guilty to a term of incarceration of life without the possibility of parole…."). The Court has no doubt that Petitioner harbored that subjective belief (and maybe even objectively reasonably so, despite what the state appellate court found in that regard,[6] in light of the sentences previously imposed by the federal court and the Montgomery County court). But Petitioner's subjective belief does not establish that he was promised a sentence of fifteen years to life imprisonment or that he was misled about the possibility of being sentenced to life imprisonment without parole. And Petitioner's subjective belief cannot supplant his sworn declarations in open court. The record demonstrates that Petitioner was told, and acknowledged, *both* what the maximum sentence was, *and* that the trial court was not bound by the plea

---

[6]  The state appellate court stated, "Regardless of whether Jones subjectively believed that by pleading guilty he could be certain of being sentenced to 15 years to life, the record provides no evidence that any such belief was objectively justified." (Opinion, Doc. 7, at PageID 340).

agreement (pursuant to which both defense counsel and the prosecuting attorney recommended a sentence of fifteen years to life).  A guilty plea is not rendered involuntary or constitutionally invalid just because the defendant receives a longer sentence than he expected.  *See Stout v. U.S.*, 508 F.2d 951, 953 (6th Cir. 1975) ("A plea is not rendered involuntary merely because a prediction that a guilty plea will result in a light sentence does not come true.") (and cases cited therein); *U.S. v. Ford*, 15 F. App'x 303, 308 (6th Cir. 2001) ("Unfulfilled subjective expectations of counsel and a defendant regarding the possible length of sentence do not render an otherwise valid plea involuntary.") (and cases cited therein).  The Court recommends that Petitioner's first ground for relief challenging the voluntariness of his guilty plea be denied as without merit.[7]

### B.  Ground Two

Petitioner titles his second ground for relief "Unconstitutional Conditions Doctrine."  As Petitioner explains it, "the government forced Jones to choose between two constitutionally protected rights; and [] the government conditioned Jones' receipt of a government benefit [i.e. the Greene County Plea Agreement Report (GC-PAR)] on the waiver of a constitutionally protected right; namely Jones' rights not to be compelled to incriminate himself, as per the Fifth Amendment, and Jones was induced to waive, 425 days prior to his plea hearing in the Greene County Court of Common Pleas (GCCCP), by reason of the GFPA."  (Reply, Doc. 12, at PageID 420).  Petitioner additionally posits that Greene County prosecutors conditioned Petitioner's receipt of his negotiated plea agreement by drafting into the agreement a provision allowing the

---

[7]   To the extent Petitioner suggests that the trial court did something untoward by accepting Petitioner's guilty plea, while knowing full well it intended to sentence Petitioner to life imprisonment without parole (and assuming that would even undermine the voluntariness of Petitioner's plea), the record does not support Petitioner's assertion.  The timing between Petitioner's guilty plea (February 4, 2020) and Petitioner's sentencing (February 13, 2020) undercuts his suggestion that the trial court necessarily, or even presumably, had the LWOP sentence in mind at the time that it accepted Petitioner's guilty plea, especially in view of the consideration of sentencing investigation that informed the trial court's sentencing decision.  (Doc. 12-5, at PageID 443).

trial court to exercise discretion in a way that thwarted the benefit Petitioner thought he was receiving.  (*Id*., at PageID 430).

Respondent argues that Petitioner waived this claim because he failed to raise it on direct appeal.  (Return, Doc. 8, at PageID 365).  In response, Petitioner concedes that he did not raise this claim, but argues that it is not procedurally defaulted because it constitutes a novel legal argument that no competent lawyer would have known to raise, and the Supreme Court has held that "'where a constitutional claim is so novel that its legal basis is not reasonably available to counsel, defendant has cause for failure to raise the claim in accordance with applicable state procedures.'" (Reply, Doc. 12, at PageID 402 (quoting *Reed v. Ross*, 468 U.S. 1, 16 (1984)).  Petitioner's "cause" argument is not well taken, but in any event, his claim is without merit.

With respect to Petitioner's assertion of "novel legal argument" as cause, Petitioner appears to undermine his own assertion.  In response to Respondent's professed confusion about Petitioner's "unconstitutional conditions doctrine" claim, and whether such a claim exists, Petitioner states, "The Unconstitutional Conditions Doctrine, has a long standing within the United States Supreme Court[,]" and "has its origin in *Barron v. Burnside*, 121 U.S. 186 (1887), where the Court held, 'no condition can be imposed by the state which are repugnant to the Constitution and the laws of the United States.'" (Reply, Doc. 12, at PageID 418).  It is fair to ask how an argument that "has a long standing within the United States Supreme Court," and has its origin in a case dating back a century, could be deemed so novel that Petitioner was excused from having to raise it in the state courts.  Petitioner has failed to demonstrate cause and prejudice to excuse the default of his second ground for relief.

In any event, his claim is plainly without merit.  Quoting Black's Law Dictionary,

28

Petitioner defines the Unconstitutional Conditions Doctrine as "'the rule that the government cannot condition a person's receipt of a governmental benefit on the waiver of a constitutionally protected right; the rule that the government cannot force a defendant to choose between two constitutionally protected rights.'" (Reply, Doc. 12, at PageID 419 (quoting Black's Law Dictionary, Ninth Edition, p. 1664 (2009)).

The Sixth Circuit has held that "[u]nder the unconstitutional conditions doctrine, 'a state actor cannot constitutionally condition the receipt of a benefit, such as a liquor license or an entertainment permit, on an agreement to refrain from exercising one's constitutional rights....'" *R.S.W.W., Inc. v. City of Keego Harbor*, 397 F.3d 427, 434 (6th Cir. 2005) (quoting *G & V Lounge, Inc. v. Mich. Liquor Control Comm'n*, 23 F.3d 1071, 1077 (6th Cir. 1994)). But the existence of this doctrine does not provide a basis upon which habeas corpus relief can be granted.

Petitioner does not cite, and the Court is not aware of, any authority applying this doctrine to plea agreements in criminal cases. Whatever application this doctrine might have in the context of criminal law generally, and in the plea negotiation process specifically, the fact remains that the doctrine, as framed by Petitioner in quoting Black's Law Dictionary, essentially describes every plea negotiation process that goes on in criminal courts around this country every day. And the Court has already noted how critical the plea process is to the functioning of the American criminal justice system. In short, because the Court has determined that Petitioner's plea was entered knowingly, intelligently, and voluntarily, the Court is not persuaded that the Unconstitutional Conditions Doctrine applies. Petitioner's second ground for relief should be denied as plainly without merit.

29

## C.  Ground Three

In his third ground for relief, Petitioner argues that his sentence of LWOP was excessive in violation of his rights under the Eight and Fourteenth Amendments.  (Petition, Doc. 3, at PageID 39; Reply, Doc. 12, at PageID 431-32).

Respondent argues that Petitioner waived this claim, first by failing to present it to the state courts on direct appeal as a federal constitutional claim, and then by failing to perfect his direct appeal to the Supreme Court of Ohio.  (Return, Doc. 8, at PageID 366-68).  Respondent also argues that Petitioner cannot satisfy either the cause-and-prejudice or fundamental miscarriage of justice exceptions for excusing the default.  (*Id*. at PageID 370-71).  Specifically, Respondent argues that Petitioner cannot offer ineffective assistance of appellate counsel as cause, since he did not preserve that claim in the state courts, and that Petitioner has not advanced an actual innocence-based argument to satisfy the fundamental miscarriage of justice exception.  Finally, Respondent asserts in the alternative that Petitioner's claim is without merit, since state trial courts are afforded considerable discretion in criminal sentencing, and since the LWOP sentence that Petitioner received did not exceed statutory limits.  (*Id*. at PageID 378-81).  Although the Court agrees that this claim is probably waived for want of fair presentment,[8] the Court also finds that the claim is without merit, and should be denied on both bases.

In order to satisfy the exhaustion requirement in habeas corpus, a petitioner must fairly present the substance of each constitutional claim to the state courts as a federal constitutional claim.  *Anderson v. Harless*, 459 U.S. 4, 6 (1982); *Picard v. Connor*, 404 U.S. 270, 275 (1971).

---

[8]  For the reasons discussed more fully in connection with ground one, the Court is satisfied that Petitioner can demonstrate cause and prejudice to excuse the procedural default stemming from his failure to timely file his memorandum in support of jurisdiction with the Supreme Court of Ohio.

This requirement provides state courts the opportunity to correct the alleged violation of a federal constitutional right that might invalidate a state criminal judgment.  The Sixth Circuit has held that there are four ways by which a petitioner can satisfy the fair presentment requirement:  (1) by relying on federal cases employing constitutional analysis; (2) by relying on state cases employing federal constitutional analysis; (3) by phrasing the claim in terms of constitutional law or in terms sufficient to allege the denial of a specific constitutional right; or (4) by alleging facts well within the mainstream of constitutional law.  *McMeans v. Brigano*, 228 F.3d 674, 681 (6th Cir. 2000) (citing *Franklin v. Rose*, 811 F.2d 322, 326 (6th Cir. 1987)).  Review of the appellate and reply briefs confirms that Petitioner did none of these.

Petitioner's claim challenging his LWOP sentence as excessive focused entirely on state statutory guidelines and principles governing a trial court's imposition of a criminal sentence, as well as state statutory guidelines for vacating, modifying, or reducing criminal sentences. (Appellant's brief, Doc. 7, at PageID 271-80).  The principles and rules that Petitioner invoked were rooted in state statutory law and state cases discussing state statutory law.  Petitioner made no express mention or implicit invocation of any specific federal constitutional right or amendment.  Not even Petitioner's mentions of aspirational aims such as the law's allowance of rehabilitation and reentry into society are sufficient to summon any specific constitutional right. Petitioner focused solely on the trial court's alleged failure to give proper weight to state statutory guidelines in sentencing Petitioner to LWOP.

To the extent Petitioner suggests in his Reply (Doc. 12, at PageID 431-32) that state appellate counsel's mention in the direct appeal reply brief about Petitioner's sentence being disproportionate to that imposed on other offenders, (Doc. 7, at PageID 297), was sufficient to

invoke the Eighth Amendment, the Court disagrees.  In view of Petitioner's singular, pervasive emphasis throughout his direct appeal on whether the LWOP sentence imposed by the trial court was consistent with the letter and spirit of state statutory guidelines, the Court is not persuaded that a single mention of proportionality was sufficient to invoke a specific federal constitutional right or put the state appellate court on notice that it was being asked to address a federal constitutional claim.  In sum, Petitioner failed to fairly present the excessive punishment claim set forth in his third ground for relief to the state courts as a federal constitutional claim.

Petitioner appears to argue in the alternative that ineffective assistance of appellate counsel constitutes cause to excuse any procedural default, due to counsel's failure to raise this claim as a federal constitutional claim.  (Reply, Doc. 12, at PageID 403-05).  But as Respondent correctly points out, the Supreme Court has held that a habeas petitioner cannot present as "cause" a claim of ineffective assistance of counsel that the petitioner did not first present to the state courts. *Edwards v. Carpenter*, 529 U.S. 446, 451-53 (2000).  As for Petitioner's argument that he is currently attempting to exhaust his appellate counsel ineffectiveness claim in the state courts, and that this Court should stay these proceedings to permit him to do so (Reply, Doc. 12, at PageID 405), the Court declines to do so, since Petitioner's claim is plainly without merit.

First, Petitioner's claim fails as a federal constitutional matter, since the LWOP sentence did not exceed the punishment prescribed by statute.  *See, e.g., United States v. Layne*, 324 F.3d 464, 474 (6th Cir. 2003) ("[a] sentence within the statutory maximum set by statute generally does not constitute 'cruel and unusual punishment.'" (quoting *Austin v. Jackson*, 213 F.3d 298, 302 (6th Cir. 2000)).  And even as to the state-law component of Petitioner's argument, the trial court stated in its sentencing opinion (Doc. 7, at PageID 246) it considered the purposes of

32

felony sentencing set forth in Ohio Rev. Code § 2929.11 and § 2929.12. The trial court's failure to ascribe to those factors the weight that Petitioner believes should have been ascribed does not constitute a complete failure to consider those factors sufficient to undermine the legality of the sentence.

For the foregoing reasons, the Court recommends that Petitioner's third ground for relief be denied as procedurally defaulted and without merit.

## IV. THE MOTION FOR STAY AND ABEYANCE IS DENIED

As noted earlier, Petitioner asks this Court to stay these proceedings pending his exhaustion of state-court remedies. (Motion, Doc. 11; Reply, Doc. 12, at PageID 395-36, 400, 409-12).

Because federal district courts may not adjudicate a mixed habeas petition that contains both exhausted and unexhausted claims, the Supreme Court in *Rhines v. Weber*, 544 U.S. 269, 275-76 (2005), held that district courts have discretion, in limited circumstances, to stay habeas proceedings and hold them in abeyance to allow a petitioner with a mixed petition to return to state court to exhaust his unexhausted claims. A stay is appropriate only when the unexhausted claims are not plainly meritless, and the petitioner has shown good cause for his failure to exhaust his claims earlier. *Id*. at 277. Stay-and-abeyance is only available in limited circumstances at the discretion of the district court and must be conditioned on time limits so as not to undermine the AEDPA's objectives of streamlining habeas proceedings and encouraging finality. *Id*. at 276-78. A stay is not warranted here because even assuming Petitioner has shown good cause, his Petition does not appear to contain unexhausted claims, and as demonstrated above, his claims are plainly meritless.

33

**IT IS THEREFORE ORDERED:**

Petitioner's Protective Motion for Stay and Abeyance (Doc. 11) is **DENIED**.

**IT IS THEREFORE RECOMMENDED:**

1.  The petition be **DENIED** with prejudice for the reasons that Petitioner's grounds are procedurally defaulted and/or without merit.

2.  A certificate of appealability should issue with respect to Petitioner's first ground for relief, because jurists of reason would find debatable whether the Court was correct in determining that Petitioner's voluntariness challenge is without merit, *Slack v. McDaniel*, 529 U.S. 473, 484 (2000), and the Undersigned finds "substantial reason to think that the denial of relief might be incorrect[,]" *Moody v. U.S.*, 958 F.3d 485, 488 (6th Cir. 2020). A certificate of appealability should not issue with respect to Petitioner's second and third grounds for relief because reasonable jurists would not find debatable or wrong the Court's determination that those claims are procedurally defaulted and without merit.

3.  Because the Court has determined that a certificate of appealability should issue as to Petitioner's first ground for relief, with respect to any application by Petitioner to proceed on appeal *in forma pauperis*, the Court should certify pursuant to 28 U.S.C. § 1915(a)(3) that an appeal of any Order adopting this Report and Recommendation would be taken in "good faith" and therefore **GRANT** Petitioner leave to appeal *in forma pauperis* upon a showing of financial necessity. *See* Fed. R. App. P. 24(a); *Kincade v. Sparkman*, 117 F.3d 949, 952 (6th Cir. 1997).

**NOTICE REGARDING OBJECTIONS**

Pursuant to Fed. R. Civ. P. 72(b), **WITHIN 14 DAYS** after being served with a copy of the recommended disposition, a party may serve and file specific written objections to the

34

proposed findings and recommendations.  This period may be extended further by the Court on timely motion for an extension.  Such objections shall specify the portions of the Report objected to and shall be accompanied by a memorandum of law in support of the objections.  If the Report and Recommendation is based in whole or in part upon matters occurring on the record at an oral hearing, the objecting party shall promptly arrange for the transcription of the record, or such portions of it as all parties may agree upon, of the Magistrate Judge deems sufficient, unless the assigned District Judge otherwise directs.  A party may respond to another party's objections **WITHIN 14 DAYS** after being served with a copy thereof.  Failure to make objections in accordance with this procedure may forfeit rights on appeal.  *See Thomas v. Arn*, 474 U.S. 140 (1985); *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981).

     **IT IS SO ORDERED**.

Date: 2/13/2024

Karen L. Litkovitz
Chief United States Magistrate Judge

35